IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                      Plaintiff,<br>    v.<br>LLOYD ROBL,<br>                      Defendant. | ORDER FOR RESTITUTION<br><br>18-cr-136-wmc |

---

On June 20, 2019, the defendant, Lloyd Robl, entered a plea of guilty to Count 14 for falsely holding himself out as a licensed and insured asbestos abatement contractor "to P.H. in Minnesota," which was a part of a larger scheme to defraud customers seeking asbestos abatement by a qualified contractor, including its safe removal and disposal. He further pleaded guilty to Count 15 for knowingly releasing asbestos into the ambient air by burning asbestos-containing material in burn piles and in 55 gallon burn barrels at his home in New Richmond, Wisconsin, and spreading the ashes of these fires along his property line and an adjacent farm field, as well as other sundry locations.

On September 12, 2019, defendant was sentenced in this case to a term of imprisonment of 72 months each on counts 14 and 15, to run consecutively. At the time of the sentencing hearing, a formal restitution amount was not yet determined. Subsequently, the government filed a motion to find restitution in the total amount of $95,819.41. (Dkt. #60.) A hearing on restitution was originally scheduled for

1

December 12, 2019, but at defendant's request it was canceled until after his then pending, direct appeal. (Dkt. #61.) After the Seventh Circuit dismissed Robl's appeal on February 12, 2020, the case was remanded and a telephonic hearing was held as to entry of a restitution order on March 31, 2020, at which the government was represented by Assistant United States Attorney Daniel J. Graber and defendant was represented by Attorney Kim M. Zion.

The principal purpose of the hearing was to address the necessity of any further evidentiary proof in light of the government's previously filed restitution memorandum and supporting materials. (Dkt. #60.) During the hearing, counsel for defendant, Ms. Zion, raised two, basic objections to entry of a restitution order.

First, ostensibly on behalf of her client and his appellate counsel, Ms. Zion questioned the court's continued jurisdiction to hold a restitution hearing following remand of his direct appeal, although acknowledging that she had no legal authority supporting that position. This position was confusing at best, since the court granted *defendant's* request to continue the restitution hearing pending the outcome of his appeal on the ground that the question of restitution might not be ancillary to the issues he was appealing. Perhaps Robl is suggesting that the passage of time has caused the government to forfeit its right to pursue a hearing on the matter, but the court retains the power to order restitution, having stated its intent to do so at sentencing. *See Dolan v. United States*, 560 U.S. 605, 608 (2010) ("[A] sentencing court that misses the 90-day deadline [set forth in 18 U.S.C. § 3664(d)(5)] retains the power to order restitution -- at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order

restitution, leaving open (for more than 90 days) only the amount"); *United States v. Gushlak*, 728 F.3d 184, 191-92 (2d Cir. 2013) (district court had the authority to determine restitution amount 18 months after stay of the restitution issue was lifted pending defendant's appeal, since the district court made it clear that it would order restitution). Given that defendant has cited no legal authority suggesting that this court lacks jurisdiction over this issue now that his appeal has been dismissed, the court rejects this objection.

Second, Ms. Zion asserted a right to confront and cross-examine each of the apparent victims of her client's fraudulent schemes to confirm that the checks paid to Robl's asbestos abatement services company, AAS, Inc., were in fact for the purpose of asbestos removal exclusively, rather than some other work. As the court explained at the time of sentencing, "the vast preponderance of the evidence supported a loss amount of at least $94,031.41," which consisted of the total of checks paid by customers of AAS. Indeed, in an abundance of caution, the court excluded in its loss amount calculation at sentencing an additional $21,291.59 in checks made out to the defendant personally, rather than to his asbestos abatement company, even though some of those checks were specifically marked as being for asbestos removal, and the defendant appears to have had no other business ventures. Finally, in light of the government's supplemental notice of August 6, 2019, advising that Robl's landlord incurred an additional $1,931.95 to cover the remediation expenses in cleaning up Robl's house and land after his eviction, as corroborated by copies of his paid invoices associated with that cleanup, the court found a total loss in the amount of $95,819.41 ($94,031.41 + $1,788.00).

During the March 31st hearing, as well as in a pre-hearing written submission, the government stood on its previously filed Restitution Memorandum, proposed findings of fact and supporting summary exhibits. (Dkt. #60.) Defendant's counsel did not object to that proof, except to suggest the possibility that some of the work performed may have been for other than asbestos removal services. For the following reasons, the court finds overwhelming evidence to support a restitution award in the amount of $94,031.41.

To begin, the court finds Ms. Zion's assertion that each of the victim customers of AAS must be called to testify in person at an evidentiary restitution hearing is wholly unjustified. The burden is on the government to demonstrate the loss amount by a preponderance of the evidence, not beyond a reasonable doubt. 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount of type of restitution shall be resolved by the court by the preponderance of the evidence."); *United States v. Danford*, 435 F.3d 682, (7th Cir. 2006) ("A civil remedy included with a criminal judgment does not make it a 'penalty of a crime' that must be established by a jury beyond a reasonable doubt.") (citing *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (when sentencing under § 3663A, "the judge may make any appropriate findings by a preponderance of the evidence")).

Regardless, the individual checks written directly to his asbestos abatement services company, AAS, by customers, leave little, if any, doubt that each of these customers were defrauded into believing that they had hired a licensed and insured asbestos removal company capable of removing and disposing of their asbestos materials in a proper and safe manner. Indeed, the government's undisputed factual summaries submitted pursuant to Fed. R. Evid. 1006 and attached as Exhibits A and B to the government's Restitution

Memorandum, as well as the customers' underlying checks, make this a near certainty. Moreover, Robl himself admitted that he was neither licensed nor insured to remove asbestos as he repeatedly held himself out to be, nor did he remove and dispose of the asbestos safely.

The mere suggestion by defendant that *some* of the work performed under his asbestos removal contracts was for unrelated work is not enough to create reasonable doubt, much less require a further evidentiary hearing where the standard is "more probable than not." Nor does it require *the government* to produce each victim/customer for formal cross-examination by defendant's counsel. Certainly, the government should be held to its burden of proof, but the defendant was in the best position to identify any work that was unrelated to his asbestos services, and could have subpoenaed their appearance. Yet even when given an opportunity to cite a single example of a customer for whom additional work was done at the March 31st hearing, Ms. Zion conceded that she could offer no such example.[1] Having failed to proffer any such evidence, the court will not trouble the individual victims to appear and provide testimony, at least in light of the overwhelming circumstantial evidence before the court.

Accordingly, the court will enter restitution in the amount of $94,031.14. *See* PFOF 6 in Government's Memorandum.[2] The schedule of payments to the individual

---

[1] Even if defendant *had* produced some evidence that he performed additional, unrelated work beyond the asbestos removal for which he was plainly, principally hired, that work, too, would have been obtained by virtue of his original fraudulent representations that his was a licensed, insured and reputable company.

[2] As discussed above, the court added an additional amount of $1,788.00 to this sum for purposes of calculating the loss amount at the time of sentencing based on a finding that a check made in

5

victims can be found in Exhibit A (after excluding those in Exhibit C) to the sealed Government's Restitution Memorandum.

ORDER

IT IS ORDERED that:

1. Judgment is GRANTED against defendant Lloyd Robl for restitution in the amount of $94,031.14 to be payable to the Clerk of Court for the Western District of Wisconsin and disbursed by the Clerk consistent with the schedule attached to the sealed Government's Restitution Memorandum.

2. The defendant does not have the economic resources to allow him to make full payment of restitution in the foreseeable future under any reasonable schedule of payments.  Nevertheless, pursuant to 18 U.S.C. § 3664(f)(3)(B), he is to begin making nominal payments of a minimum of $50 each month, beginning within 30 days of his release from imprisonment.

3. The defendant shall notify the court and the United States Attorney General of any material change in his economic circumstances that might affect his ability to pay restitution.

4. No interest is to accrue on the unpaid portion of the restitution.
   In all other respects, the judgment remains as entered on September 12, 2019.

Entered this 6th day of May, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

payment to the defendant for "Garage ACBM Removal" likely meant that the defendant had performed a job involving asbestos-containing building materials.   Out of an abundance of caution, however, the court will exclude this check, along with the others written to Robl personally, despite the likelihood that most, if not all, such checks were for asbestos removal work as well.